May it please the court, I'm Joel Junker, arguing on behalf of Norman G. Jensen, Incorporated. As a ministering historical footnote, Norman Jensen himself testified before the Senate Committee in 1969 in favor of the amendments that we are discussing today, which passed in 1970. I would like to point out to the court some further observations to our brief, and of course, answer any questions the court may have. I'd like to begin by noting with specific respect to this case and with respect to possible jurisdiction of the 1581A, that this case is unlike any other case cited by the government or the court below for the proposition that a request for an accelerated disposition must be made in order to achieve 1581A jurisdiction to preclude 1581I. Norman G. Jensen is not requesting that this court enforce its statutory rights to in any way deal with the merits or the substance of its protests. It is not asking the court to interfere with the process or involve itself in the process of the decision-making protest process whatsoever. It is merely asking that the court seek the only remedy or enforce the only remedy available to it for obtaining the administrative review and decision, which is its statutory right expressly granted under 1515A. That gets us to the question that I had about this case, which is that you've said in your brief on a couple of occasions that what you want is a decision, i.e., a written explanation, a reasoned explanation for a decision if there's to be a denial of your protest. And as opposed to what you would get under the expedited system in all likelihood, or at least possibly, which is a deemed denial, what is it about a deemed denial that you regard as being unsatisfactory? And before you answer that, let me just say that in many areas of administrative law in which we have jurisdiction, we frequently see deemed denial. And contract, federal contract claims, are deemed denied if the contracting officer doesn't act within the next period of time. Believe me, it happens over and over and over again. And nobody thinks that anything else is just, well, all right, it's denied. But you seem to attach substantial significance to the difference between a written denial with reasons versus a deemed denial. Why? I would answer that threefold, Your Honor. First, this is an unusual situation in that Jensen has a statutory right to review and a decision. And under the provisions for requests for accelerated disposition, that right goes away because once the accelerated disposition is requested, Customs has the option of not doing anything. Right, that's a deemed denial. And so essentially what's happening here, Your Honor, is that Jensen is being forced to waive rights it has to a decision to.  But my question is, why do you care? Why do I care? As a practical matter, what's the difference? As a practical matter, it's easy to answer, Your Honor. 308 protests, 1,529 entries involving what we think are merely clerical and ministerial errors. Why should an importer or a broker have to subject itself to the cost of discovery and the cost of dealing with the court action when it should be in what is hopefully not a major trade issue, when that's the job of Customs under 1515A? That's the practical argument. Well, but suppose Customs were to have acted in this case and had said, your protests are denied because Customs has examined all of the entries and is satisfied that each of them was regular and proper, period. That's your written explanation. Why would you be in better shape with that in your hand than you are with a deed denied? We wouldn't in a substantive sense, Your Honor. And one of the other practical effects with a Jensen or any other importer who's subject to a protest or who's offered a protest is it would be helpful to have some idea of whether there are grounds for an appeal before one has to go to the cost expense necessity of filing an appeal. 1581A, to the extent they're encouraging this court to find jurisdiction under 1581A, I encourage the court to look at the exact language of the grant of jurisdiction there. It provides that the court, quote, shall have exclusive jurisdiction of civil actions commenced to contest the denial of a protest in whole or in part under section 1515A. We have no denial here, Your Honor. But had you gone under 1515B and there had been a deemed denial, that would be the section you would go under, wouldn't it? That's correct. So a denial includes a deemed denial. There is no requirement. No, but the argument you just made, which is that 1581A doesn't apply because there's been no denial here. But if you were to go under 1515B, there would be a denial, right? That's the question. Do you have a way under 1515B to go to the Court of International Trade, and what is it? And it would be 1581A, correct? If we sought to waive our right to the administrative review, which is not what we want, Your Honor, we don't want judicial review unless it's necessary. We want what we're entitled to under 1515A, which is administrative review and an allowance or a denial with reasons therefore and notice therefore. Not only my client, but the entire importing industry would like the law to be enforced as it reads, as is referenced by the amicus briefs in the Hitachi case. The other aspect is, at the end of the Court of International Trade opinion, there's footnote 11. And in the second half of the footnote, at the bottom of page 14, it says, defendant is represented to plaintiff in the court that customs had prepared a draft ruling letter on plaintiff's protest, but ceased work. And then the footnote goes on and concludes it's reasonable to assume that upon the dismissal of this action in the 2009 action, customs would resume work on its ruling and issue the same to plaintiff. And correct me if you disagree, but I read that as the court saying, well, customs has said that it's basic and I'll ask the government this, or maybe one of my colleagues will. Customs is saying, well, if this case gets dismissed, we'll finish the protest ruling, and you then, your client, would have what it wants. Well, Your Honor, you know, Has there been any discussion about that? In the action below? Yeah. Quite a bit, Your Honor. I'm not sure what's appropriate on the record. In fact, the court encouraged the parties to seek resolution by encouraging, this is on the record, the oral argument, encouraged the government to indeed show us a copy of the draft opinion, and therefore work out a deal where we might be able to withdraw our case, because we have some sense that it's going to be coming. My client, given the history of this case, is not convinced from the conduct of customs that it is indeed a reasonable assumption. They have closed their administrative proceedings. We argued in our reply brief, they have cited no authority that they have the opportunity to open a closed administrative proceeding, and we have never seen the so-called draft. We have no idea what it does, or what it does, or what it says. And indeed, we are looking at the government's position that indeed, under their regulations, they cannot proceed, given the fact that a case was filed to protect our rights when they wouldn't inform us of whether our rights even needed to be protected. But presumably, I guess, we have to ask the government, obviously, in fairness to you, Mr. Junker, but presumably, if the case was dismissed, then the government would be free to proceed. They say they're not, Your Honor. That's all I can offer. And my client does not consider it a reasonable assumption that we will see it. After two years of waiting, and then inquiring, going back and forth, getting no response, there is no factual basis for us to assume reasonably that we'll ever see that decision, unless and until this court requests an order that the decision be made under 1515A. The other thing that I'm concerned about, and my client's concerned about, if we have to proceed under an accelerated disposition request to a deemed denial or not to the court, is it effectively gives the government unilateral power to completely nullify or negate the statutory requirements under 1515A. And this is the classic case. They simply did not decide the case. Then they would not tell us the status of our protest to know whether it was necessary to protect our potential appellate interest. We did not know whether there was a denial that needed to be contested under 1515A. So a protective lawsuit was filed in the absence of any communications from Customs on that issue. Now we have the government arguing that there must be a request for accelerated disposition in order for us to be able to get the remedy we seek. However, if we request that, Customs no longer has to rule on our protests.  And at that point, then we have to go to court. And there has been no administrative review. And that's entirely in the control of Customs. And I submit to the court that Congress did not intend, in requiring Customs to enter a decision, to give Customs at the same time the unilateral power to absolve itself of that responsibility. That's a concern we have. With respect to 1515I, there's a tension between the statute, which is a broad grant of jurisdiction. You mean 1581I. I'm sorry. Thank you, Your Honor. 1581, there are too many 15s in there. I get them confused every time. Thank you, Your Honor. 151581I is a broad grant of jurisdiction. It is circumscribed, however, by the holdings of Miller and National Corn Groups, which says that you may not rely on 1515I if you use it to circumvent the prerequisites of another provision of the jurisdictional statute. In this case, we are not seeking at all to circumscribe the prerequisites of 1581A. 1581A is to contest the denied protest. We're trying to get a protest decision. We're not trying to circumvent the requirements of 1581A. We are trying to put the requirements or prerequisites of 1581A in place so we know that jurisdiction is appropriate under 1581A. The other concern we have about the government's argument in the context of 1581I is that we believe it goes against the teachings of this Court in Canadian Wheat Board. In Canadian Wheat Board, the government argued that proceeding under 1581I was not appropriate because the plaintiff could have sought another procedural avenue to obtain its remedy, which then would have resulted in jurisdiction under another provision of 1581A, or excuse me, 1581, other than 1581I. And the Court rejected that argument. It said we will not force or encourage a plaintiff to use one procedural avenue option over another solely for the purposes of forcing them to achieve another jurisdiction under 1581. And indeed, in our case, if that's not only appropriate because of the teaching of the case, it's also appropriate because to force us to choose another procedural option, i.e. a request for accelerated disposition, to obtain another jurisdiction under A, doesn't give us the remedy we're seeking. We can't get under 1581A an administrative review. We can hope for one if we waive our statutory rights to one, but it doesn't give us the remedy we're seeking. So we submit then what the Court's asking goes against the teachings of Canadian Wheat Board. Now you are into your rebuttal. I see that. I'll preserve a few more moments for rebuttal. Thank you. May it please the Court, the trial court's dismissal of this action should be affirmed because the statute provides a remedy to Jensen, but Jensen has chosen not to pursue that remedy. Because Jensen is not following the congressionally mandated framework of 1515, it cannot invoke the trial court's residual jurisdiction of 1581I. When you start off that way, it does prompt me to ask whether your position is really consistent with the congressional mandate. What Congress said is in 1515A, customs has two years, and in 1515B, there's an alternative means of proceeding if the importer wishes. Your position seems to be that the two years is unenforceable if it is something that customs has to pay any attention to at all, and that instead the only way to get an expedited disposition is to go through B, so that B is not an alternative. It's the only remedy for someone that wants to get a disposition that occurs at some point before customs feels it's ready to move, even if customs goes for five years. Why is that consistent with what Congress specifically wrote in 1515A? Certainly, Your Honor. Two years. You're saying we can, your position seems to be you could take 10 years. Is that correct? Well, no, Your Honor. Let me explain the framework of the statute. Well, let me make sure I understand your note. If we were here 10 years after the fact, would you be making the same argument? Certainly, Your Honor. Okay, so customs can take 10 years. So your answer is yes to my question, right? Yes, to the extent that Jensen chooses not to invoke 1515B. Right, right. And Jensen says, maybe he's right, maybe he's not, that he has reasons sufficient, reasons not to want to use that alternative remedy, but that doesn't respond, it seems to me, to the basic problem that Congress has said customs has two years, and customs seems to have arrogated to itself the right to take as much time as it wishes. Is that an unfair characterization of your position? Yes, Your Honor, and here's why. Why is it unfair? Customs takes their obligations under the statute very seriously, and they've created internal controls to ensure that the directive of 1515A is followed, and that it decides protests within this two-year period of time. Except when it's not followed. In certain circumstances, the agency is unable to complete its review in two years. In one circumstance, it's when there's pending litigation, which we have in this instance. We're not asking Jensen to forego its right to a substantive review. The proper course of action would be for Jensen to remove the improper court actions. There's two of them that are currently pending. So if there were no court action, if no court actions had been filed previously, you still would say, if I understand your brief correctly, that there is no authority for the courts to come in and say you're beyond your two years, mandamus or anything else, correct? Well, yes, Your Honor. Under this court's jurisprudence of Hitachi, the two-year time limitation of 1515A is directory and not mandatory. Now, Hitachi's a case in which the argument that Hitachi was making is that there has to be a remedy for a violation of the two years, and that remedy should be allowance of the protest. This, it seems to me, is a rather different situation, where here, no one's asking for allowance of the protest. There is merely a request for a decision. So you could, it isn't simply you either get allowance of the protest or customs has no obligation at all. There could be a middle ground, which is that the court has a right and a duty to say to customs you have to decide this in two years. Why isn't that the right way to dispose of this case? Well, Your Honor, it wouldn't be a middle ground, because if a writ were imposed upon the government to complete a review in a certain period of time, it would be transforming 1515A from a directory statute into a mandatory statute. It would be imposing consequences. Mandatory in the sense of a consequence, a remedy flowing. No. That wouldn't require the allowance of the protest. It would simply require a decision. And that, I mean, the whole line of cases that the court in Hitachi relied on from the Supreme Court, Pierce against Brock and so forth, were cases in which the Supreme Court said Congress has not, Congress has imposed a time limit, but it hasn't picked a remedy. And in that setting, we're not going to impose a remedy. That's very different, fundamentally different, it seems to me, from saying Congress has said there's a time limit, and the courts may have the right and obligation to enforce that time limit by saying mandamus the agency to act. Not a particular remedy, but simply saying mandamus. Why isn't that right? Well, putting jurisdiction for a side a moment, and if we would look at the application for writ of mandamus, the first element for the application would be that there is a non-discretionary mandatory obligation on behalf of the government to act. And that sole issue was directly addressed by Hitachi. So for a court to impose a writ upon the government, it would have to be transforming 1515A from a directory statute into a mandatory statute. But I think the important thing to keep in mind is that the agency takes its obligations under 1515A very seriously. In fact, in 2007, the year that these entries came in, 91.2% of all protests that were filed were decided within two years. So it's a very small number that's not being decided within two years. And of those that aren't decided within two years, the large majority aren't decided because of this practice or this policy of not deciding administrative issues when they're pending before the courts. In 2011, out of all of the protests that were suspended, 77% were suspended because of pending litigation. Let me ask you, I discussed with Mr. Jokers the footnote at the end of the CIT opinion. And he says that it's now the position of Customs that even if this case, even if these two cases were dismissed, Customs could not proceed to issue a protest. Is that correct? No, Your Honor, that's not correct. And let me explain precisely where the agency's position on this is. What Mr. Jokers referred to is pages 67 and 68 of the Joint Appendix where he received an email at the time that the litigation was commenced that said that the AFR was administratively closed. Simply because the AFR was administratively closed does not mean that the protests were administratively closed. We've indicated to Mr. Jensen on multiple occasions that if the improper court actions, both the A action and the I action were withdrawn, the agency would resume its deliberations and provide Jensen with a decision. And in fact, the record demonstrates that, that 67 and 68, that the agency had a draft decision completed and that it was under the review at the time that the improper A action was commenced. Is there any sense of how long it would take for such a decision to issue if in fact the actions were dismissed? Certainly, Your Honor. At the trial court level, we engaged in discussions, and this was on the record as Mr. Junker suggests, as to a time frame by which the agency would resolve the lead AFR under which the lead protest is suspended. And the agency had represented Mr. Jensen that they would do it in a reasonable amount of time. And I think at that moment, if my memory serves me correct, it was something around the time span of 90 days. I mean, there's certain administrative things that do need to be accomplished because of the given of this pending litigation. But if Mr. Jensen would withdraw both court actions, both the defective A action as well as this I action, the agency would voluntarily resume its deliberations. It would voluntarily reopen the AFR under which the protest was suspended and issued a decision. So. And you think it could be within 90 days? At the time of the trial court, that was my understanding. I don't have knowledge as to right now as to what the agency's time frame was, but I do know that a draft decision is under review. And if the improper court actions were removed from the docket, the agency would resume its deliberations. So your view is we decide this case solely and we can decide this case solely on that basis and not get into whether B is the exception to A and so forth, that it ought to be decided strictly on the fact that they've got this blocking litigation. And if it's removed, the government tells us there's going to be a decision imminently. So everything else is going to be mooted. All the arguments with respect to A and B and so forth. Well, once the agency does render a decision, all arguments would be mooted, Your Honor, but the main focus of the action here is jurisdiction, whether the court has, trial court has jurisdiction under I to hear Mr. Jensen's claims. And so the whole basis of our argument is that Congress has provided a framework by which protestants can have their claims reviewed and it's 15-15. And as we've discussed, it directs the agency to do it within two years and the large majority of time the agency does do it within two years. But if the protestant becomes frustrated with delays, Congress at the time of the 1970 Act deliberated this exact issue and included in the legislative history and this is included both in the Jensen trial court decision as well as Hitachi. The Senate report, number 91-576 at page 28 for the Customs Court Act of 1970 provided the statement, importers concerned about unreasonable delay at the administrative level are fully protected by the new provision of Section 15-15B for obtaining accelerated disposition. So our view is there's two options for Mr. Jensen. If he doesn't want to go the route of accelerated disposition, then the proper course of action is to remove the litigation that is prohibiting customs from acting and allow the agency to do what it intends to do which is review these claims under 15-15A. If Jensen, however, does not want to wait for that substantive review, then it has a remedy available to it which be file request for accelerated disposition. And if all of those things happen, that is to say everything up to but not including 15-15B, then the agency having, although having represented that it would get this matter taken care of within 90 days could take as much time as it wished and there would be no way that Mr. Jensen could obtain relief from a court. Is that correct? Yes, to the extent that Mr. Jensen doesn't elect 15-15B. That was, I may be wrong. Yes. But from our perspective, that would be at Mr. Jensen's choosing. I mean, all of this is within Mr. Jensen's control. If Mr. Jensen seeks a substantive review, then his remedy is to wait for the agency to give him the substantive review. Let me ask you this question, and this pertains to the question of whether the matter that was raised initially in Mr. Jensen's original opening brief and then at much greater length in his reply brief as to whether Section 177.7 says what you say it says. He says, and you're familiar with the article, so I won't go through the entire thing, but he says that protests by virtue of 170 are excluded from that provision. If he's wrong, why is he wrong? Well, he's right to a certain extent, meaning that we agree that your standard protests aren't subject to 177.7. Right. But the reason why that regulation prohibits the agency in this circumstance is that 177 encompasses AFRs, the applications for further review, and that comes in under 177.1 and 177.12 as well as 174.25. In those three provisions, it defines what a ruling is, and under those definitions it encompasses an application for further review. But that wouldn't happen, that's not the initial decision on protests, right? Well, no, what ends up happening at the administrative level when you file a protest is that the protestant can elect to have further review be done, which means it's forwarded to headquarters to have this application for further review. The protest is suspended under the application because the court acts at the direction of headquarters. So here, while 177.7 wouldn't technically prohibit the protest from being decided, it does prohibit the application for further review from being decided, which is the province of headquarters. But here, the protest has not been decided, correct? No, Your Honor, the protest has not been decided and can't be decided until the AFR has been decided because the port acts at the direction of headquarters. So it's sort of like it's a domino effect, meaning the AFR needs to be decided, which contains these legal issues. But headquarters doesn't get involved in every case, right? No, well. So, I mean, normally the protest just gets decided at the port and headquarters never hears that, right? In the general sense, yes, but. So this is one of those cases that headquarters has grabbed, is that a fair statement? Well, I would need to look at the protest to see whether Mr. Jensen chose an application for further review, there's two instances in which the headquarters can review an issue. Either the protestant can elect to have the headquarters look at it or the agency can suspende, send it to headquarters and have. This is a big deal, we want to describe this at the headquarters level. Right, Your Honor. So I would need to look at the protest to see under what circumstances it was then forwarded to headquarters for review. But the reason why the agency can't act in this instance is because, under this regulation scheme, is because there's this pending AFR. But generally, the policy decisions by which the agency does not decide protests or applications for further review when it's pending before the court is administrative efficiency. If the court should come down on a legal decision contrary to how the agency views that legal issue, the litigants and the agency would have to undergo further work to undo the decision that they made that the court disagrees with. So the agency has developed this administrative policy, both for protests and for applications for further review, that if matters move into litigation, it stops all action because it doesn't want to contravene what the court is doing or have to redo whatever work was done should the court disagree with its position with respect to the legal issue. For these reasons, we submit that the trial court was proper in dismissing its action and that the statute provides Jensen with a remedy and Mr. Jensen needs to follow that statutory remedy. Let me ask one further question along the same lines that I questioned Mr. Junker and that is do you perceive there being a difference of substance between a deemed denial and a ruling assuming it's a denial by the agency under 1515A in which the agency has an obligation to state reasons for its decision? I would say it depends, yes or no, and I think Mr. Junker's point illustrates that it depends. If the litigant would like to have judicial review of its claims, then I don't see any difference because the statute provides the door by which they get to the trial court under A. If the litigant seeks an administrative determination to assess the viability of its claims, then there would be a difference but the statute allows the litigant to obtain that and that is going under 1515A and allowing the agency to conduct its administrative review. So... But not if the agency simply says we're never going to decide that. Well, I think that would be an extreme instance. The agency takes their obligations under the statute very seriously and has faked in internal control. All but 9% of the cases apparently. In 2007, 8% yes, but the majority of those is because of pending litigation, so it's not as if the agency is shirking its responsibility. Thank you, Your Honor. Mr. Junker, you have a comment, Your Honor, or a rebuttal? Before I respond to some of those points, I want to address something so I don't run out of time. We also have the issue of the failure to state a claim upon which relief can be based. The arguments are fairly fully set forth in the briefs below and reiterated in the briefs here. I would ask this court that if they find jurisdiction and find that we have not failed to state a claim upon which relief can be based, that essentially there is no further argument to be made before the court below. And so if the court here finds that there is a basis for a claim of relief,  that the writ be issued consistent with its decision. I would just point out a couple quick things. If you look carefully at the record, and we discussed this in detail in our reply brief, all the protests, or at least we thought, but it was never confirmed to us, all the protests were consolidated under a lead protest. That was the communication to us. So this idea there was some AFR and all the other protests were on their own is not an accurate description. I would point out that with respect to the claim that part 177 of the rules there under apply to prevent a ruling under an AFR as opposed to a protest that's not borne out by the regulations. The statute 1514 and 1515 refer to and reference AFRs. They are matters arising out of part 174, which applies to protests. Matters arising out of part 174 are excluded from consideration in the rules within the scope of part 177. The litigation, nobody suggested a Jensen. It's clear in the record, and I can represent to the court, nobody suggested a Jensen until the motion to dismiss was served. That if we just withdrew our litigation, we would get a ruling based on the draft. Now they've made it pretty clear that that's their position. At the same time, they're saying they can't. That's what I don't understand. They're speaking out of both sides of the mountain. My understanding, perhaps I misunderstood Mr. Miller, but my understanding was  that if they're not going to comply with the statute that says they have to rule, on what basis can I assume that they're going to proceed on an offer to avoid litigation and releasing this case? Of course, if a case were dismissed and the government attorney in the Court of International Trade affirmatively represented that a decision would be forthcoming in 90 days, that would have some consequence. Your Honor, all I can say is my client has a statutory right to an administrative review and a decision. We have not obtained the benefits of that statutory right given to my client by Congress, and you're asking me to give up my pursuit of that statutory right in the face of this really sad history of administrative action. What about what Mr. Miller has said, though, today? And what are you referring to specifically? Well, to what Judge Bryson just referred, namely that the agency would proceed, commerce would, customs would proceed to issue a decision. That and three dollars, Your Honor, would get me a cup of coffee. We have no reasonable basis to assume. I mean, Mr. Counsel is an honorable man, and we've argued before, but you have, my client has to look at the history of this case. We have spent time and money. We waited two years patiently for the statutory decision. It didn't come. We spent months inquiring about the status of it. Nothing came. When it did come, we asked for a clarification on whether all of our 308 protests were included in the consolidated decision. They wouldn't tell us. We came up against the date by which we had to file a case protectively in the event that there was some denial of which we didn't receive notice. We got no response. We had to file the case. We filed the case. They come with the motion decision. In the course of that motion, they say, all you have to do is withdraw the lawsuit, protective lawsuit. At that point, we couldn't, and I'll tell you why. I suggested it in my brief. Because after the filing of that case, Hitachi came along. And the issue in Hitachi was if the agency does not rule within two years, our protest may be deemed allowed. So we kept our, we had to keep our case in place in the event we could obtain our remedy through the Hitachi case as opposed to having to proceed with our case. So, you know, I mean, no disrespect to Customs Service. I mean, Customs and Border Protection. I mean, no disrespect to counsel, but my client simply has no basis to assume that this generous, gracious office of a decision from the judge in a draft decision, the judge incurred them to show us what we had never seen, is going to give us the remedy. We are not going to waive our rights in the hopes that Customs will give us what statutorily they haven't before and they're required to do. Very well. Thank you, Mr. Chairman. No further questions.